UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| **Jon Windham,** | ) | Civil Action No.:4:25-cv-3257-JD |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| **Experian Information Solutions, Inc.,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## COMPLAINT

1. This is an action brought by Plaintiff, Jon Windham, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

1

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e and 1681i, which are two of the cornerstone provisions of the FCRA.

6. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

## JURISDICTION AND VENUE

7. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331 and §1332.

8. Venue is proper in the Florence Division because the Plaintiff resides in Florence County and the Defendant transacted business in this division.

## PARTIES

9. Plaintiff, Jon Windham, is a resident and citizen of the State of South Carolina, Florence County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant Experian Information Solutions, Inc., ("Experian") is an Ohio company

registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, C T Corporation System, 2 Office Park Court, Suite 103, Columbia, South Carolina 29223. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

11. Defendant Experian is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a. Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

12. Defendant disburses such consumer reports to third parties under contract for monetary compensation.

13. Defendant's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer with a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and which requires Defendant to conduct a reasonable reinvestigation of disputed information received from the Plaintiff.

14. The Plaintiff alleges that Defendant repeatedly failed to provide him with a complete copy of his credit file after numerous requests; failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's Experian credit file; and failed to reinvestigate Plaintiff's disputes. Defendant also repeatedly disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to suffer damages as set

forth herein.

## FACTUAL ALLEGATIONS

15. Carrington Mortgage Services, LLC ("Carrington") was the servicer for Plaintiff's mortgage, a loan opened on June 29, 2002, and ending in account number 3965 ("Mortgage").

16. On or about May 12, 2014, Beneficial Financial I, Inc. ("Beneficial"), the alleged holder of the Mortgage, brought a foreclosure action against Plaintiff. *See Beneficial Financial I, Inc., successor by merger to Beneficial Mortgage Co. of South Carolina v. Jon Windham a/k/a Jon D. Windham, et al.*, Florence County, 2014-CP-21-00916.

17. By March 2018, the Mortgage was no longer reporting on Plaintiff's Experian credit report as seven (7) years from the date of Plaintiff's first alleged delinquency had passed.

18. In response to the foreclosure action, Plaintiff filed a counterclaim asserting numerous causes of actions relating to Beneficial's malfeasance, including allegations that Beneficial violated the South Carolina Unfair Trade Practices Act.

19. On or about September 8, 2017, the Court entered summary judgment in Plaintiff's favor on his counterclaims, including his claim that Beneficial willfully violated the South Carolina Unfair Trade Practices Act ("SCUTPA").

20. Thereafter, Beneficial appealed the Order granting summary judgment in Plaintiff's favor to the South Carolina Court of Appeals.

21. On or about August 5, 2020, the South Carolina Court of Appeals affirmed the Florence County Court's Order granting summary judgment on Plaintiff's claim that Beneficial willfully violated the SCUTPA. Thereafter the case was returned to the

Florence County Court for a trial on Plaintiff's remaining claims and a hearing on damages.

22. Plaintiff's Experian credit report dated July 29, 2021, does not include the Mortgage.

23. On or about December 13, 2021, Plaintiff entered into a settlement agreement which precluded the Mortgage from ever being reported on the Plaintiff's credit reports.

24. In April 2023, Plaintiff applied for credit and was denied due to a derogatory account reporting on Plaintiff's credit report.

25. Thereafter, Plaintiff learned that in October 2022, Defendant allowed the Mortgage to be reinserted back onto Plaintiff's credit report and the alleged delinquency re-aged. As a result, the Mortgage was reporting with seven (7) months as 180 days past due.

26. The Mortgage account was the only derogatory account reporting on Plaintiff's Experian credit report in April 2023.

27. On April 21, 2023, after two attempts to obtain a copy of his Experian credit report online through www.annualcreditreport.com, Plaintiff sent Defendant a dispute letter stating the Mortgage should not be reporting at all as it was involved in litigation and Carrington was precluded from reporting the Mortgage. Additionally, Plaintiff informed Defendant that the Mortgage was not 180 days past due. Finally, Plaintiff requested Defendant delete the Mortgage from his credit report and provide him a complete copy of his Experian credit report.

28. Defendant received Plaintiff's dispute on April 24, 2023, but never responded.

29. Defendant never performed any investigation or reinvestigation of Plaintiff's April 2023 dispute.

30. On May 3, 2023, Plaintiff was again denied credit. This denial was from South

State Bank.

31. On or about May 25, 2023, Plaintiff sent another dispute letter to Defendant. In this letter, Plaintiff reiterated he had still not received a copy of his Experian credit report, and that he had been denied a loan because the Mortgage was still incorrectly reporting on his credit report with seven months 180-days past due. Plaintiff informed Defendant that the Mortgage was involved in litigation and resolved. As a result, the Mortgage was not to be reporting at all. Plaintiff also informed Defendant that the Mortgage was not 180-days past due. In his letter, Plaintiff provided Defendant with his name, address, date of birth, and Social Security number. Plaintiff requested Defendant to remove the inaccurate Mortgage and to send him a complete copy of his credit report.

32. Experian received Plaintiff's dispute on May 31, 2023.

33. Defendant never investigated or reinvestigated Plaintiff's May 2023 dispute.

34. On or about June 8, 2023, Plaintiff received a copy of Defendant's alleged "dispute results", but there was nothing indicating what, if anything, Defendant actually reinvestigated. Instead, it was just a copy of Plaintiff's Experian credit report which indicated that, at that time, no potentially negative credit items appeared on Plaintiff's Experian report.

35. On or about June 29, 2023, Plaintiff received a new link to view Experian's dispute results dated June 29, 2023. This time the dispute results indicated that the Notice of Results had been forwarded to fifteen different entities who had viewed Plaintiff's credit report while it contained the inaccurate, derogatory Mortgage.

36. In September 2023, Plaintiff applied for a loan with Ford Motor Credit to purchase

a new truck. While Plaintiff's loan application was approved, Plaintiff was forced to trade in his 2019 truck in order to qualify for the loan to purchase the new truck.

37. On April 12, 2024, Plaintiff again requested a copy of his Experian credit report to verify that the Mortgage had not been added back to his Experian credit report.

38. On March 11, 2025, Plaintiff discovered that the Mortgage account was again reporting on his Equifax report. Accordingly, that same day Plaintiff attempted to obtain a copy of his Experian credit report through www.annualcreditreport.com, and Defendant again denied his request.

39. Defendant repeatedly failed to make any reinvestigation into Plaintiff's disputes.

40. Defendant ignored Plaintiff's disputes and repeatedly and intentionally blocked Plaintiff from being able to obtain a copy of his Experian credit file.

41. Defendant's knowing and repeated conduct warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

42. During the time that Defendant was reporting the inaccurate Mortgage on Plaintiff's credit reports, Plaintiff's credit file was viewed by Bluevine,Inc, Can Capital Merchant, Ford Motor Company, Capital One, Clarity Services, Clarity/Net Credit, Clarity/ODK Capital, Planet Home Lending, Elavon, Equifax, Experian Health, JPMCB Card, Fora Financial Advance, Marlin, Rapid Finance, and SNAP Capital.

## COUNT ONE
(Fair Credit Reporting Act)

43. The Plaintiff adopts the averments and allegations of paragraphs 15 through 42 hereinbefore as if fully set forth herein.

44. Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); and (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i.

45. Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

46. Defendant repeatedly failed to reinvestigate the Plaintiff's disputes of inaccurate information appearing on his Experian credit report.

47. Defendant repeatedly denied Plaintiff a copy of his Experian credit report.

48. Defendant allowed the derogatory Mortgage to be reinserted onto Plaintiff's credit report and re-aged so that derogatory account information would be added to Plaintiff's credit file.

49. As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered damage to Plaintiff's credit score and credit reputation, denial of credit, increased cost of credit and/or insurance, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment and mental

anguish. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

50. In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

51. Plaintiff is entitled to his attorneys' fees, pursuant to 15 U.S.C. §1681n(a).

## COUNT TWO
(Fair Credit Reporting Act)

52. The Plaintiff adopts the averments and allegations of paragraphs 15 through 51 hereinbefore as if fully set forth herein.

53. Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); and (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i.

54. Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

55. Defendant willfully failed to reinvestigate the Plaintiff's disputes of inaccurate information appearing on his Experian credit report.

56. Defendant willfully denied Plaintiff a copy of his Experian credit report.

57. Defendant willfully allowed the derogatory Mortgage to be reinserted onto Plaintiff's credit report and re-aged so that derogatory account information would be added to Plaintiff's credit file.

58. As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered

damage to Plaintiff's credit score and credit reputation, denial of credit, increased cost of credit and/or insurance, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment and mental anguish. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

59. Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, Plaintiff is entitled to statutory damages.

60. Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights. Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

61. In addition, the Plaintiff has incurred litigation expenses, and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

62. Plaintiff is entitled to his attorneys' fees, pursuant to 15 U.S.C. §1681o(a)(2).

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A. Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B. Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C. Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D. For such other and further relief as the Court may deem just and proper.

*/s/ Penny Hays Cauley*
Penny Hays Cauley, Fed. ID No. 10323
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

*/s/ Penny Hays Cauley*
Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Experian Information Solutions, Inc.
c/o C T Corporation System
2 Office Park Court, Suite 103
Columbia, South Carolina 29223

11